**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INDUCTION DEVICES LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>RECREATIONAL EQUIPMENT, INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:25-CV-00790-JRG<br>(LEAD CASE) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Recreational Equipment, Inc.'s Motion to Dismiss ("Motion"). (Dkt. No. 13.) Having considered the Motion and related briefing, the Court finds that the portion of Defendant's Motion seeking to dismiss pre-suit damages should be **GRANTED**. The Court, however, also finds that the remainder of Defendant's Motion should be **DENIED**.

## I. BACKGROUND

Plaintiff Induction Devices LLC sued Defendant Recreational Equipment, Inc., accusing it of infringing five patents: U.S. Patent Nos. 7,449,926 ("'926 Patent"), 7,899,145 ("'145 Patent"), 8,190,885 ("'885 Patent"), 8,370,543 ("'543 Patent"), and 8,543,628 ("'628 Patent"). (Dkt. No. 9.) Plaintiff alleges that Defendant indirectly infringes the asserted patents because it supports purchases using "branded contactless consumer credit cards." (*Id.* ¶¶ 33, 43, 53, 63, 73.) It does not allege that Defendant directly infringes the asserted patents.

## II. LEGAL AUTHORITY

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility requirement does not require that a plaintiff prove its case at the pleading stage, but it "'calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged.'" *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

**B. Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim for induced infringement, a patent owner must plausibly allege facts establishing three elements: 1) there has been direct infringement by a third party; 2) the alleged infringer affirmatively induced that infringement; and 3) the alleged infringer had knowledge that the induced acts constituted patent infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

**C. Patent Eligibility**

Claims directed to abstract ideas may not be patent eligible because patent protection does not extend to claims that monopolize "building blocks of human ingenuity." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216–17 (2014). Courts determine whether patent claims cover such ineligible subject matter using a two-step framework set out in *Alice*. *Id.*

At the first step, courts evaluate whether the claims are directed to an ineligible abstract idea. *Id.* If so, the second step entails "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Patent-eligible inventions "involve more than performance of 'well-understood, routine, [and] conventional activities previously

known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225).

## III. ANALYSIS

Defendant seeks dismissal of this case because Plaintiff allegedly failed to properly plead induced infringement; the asserted patents are ineligible for patent protection; and Plaintiff's infringement claims cite various payment standards but fail to provide proper notice. Defendant also seeks dismissal of any claim by Plaintiff to pre-suit damages. As explained below, the Court finds that Plaintiff's pre-suit damages claims should be dismissed. However, the balance of Defendant's Motion should be denied.

### A. Plaintiff has plausibly pled induced infringement

The Court finds that this portion of Defendant's Motion should be **DENIED**. Plaintiff advances an induced infringement theory to target Defendant's "branded contactless consumer credit cards." (Dkt. No. 9 ¶ 33.) Defendant allegedly encourages infringement, the necessary showing to support an induced infringement claim, because it "aid[s] and abet[s] others to infringe" by "advertising and distributing the Accused Instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities." (*Id.* ¶ 38.) Plaintiff's Complaint repeats similar language for each of the other asserted patents. (*Id.* ¶¶ 48, 58, 68, 78.)

Defendant argues that the Complaint does not plausibly allege that Defendant actively encouraged others to use contactless credit cards and infringe the asserted patents. (Dkt. No. 13 at 26, 27.) Defendant explains that its "passive" association with a credit card, wherein it does not control the credit card design or operation, is not inducement. (*Id.*) Defendant, however, does not dispute that it accepts contactless payments.

The Court finds that Plaintiff sufficiently alleged induced infringement. The accused product here—a physical credit card—can support contact-based payments (e.g., swiping a credit

card) or contactless payments. Plaintiff alleges that Defendant "abet[s]," i.e., encourages, "customers" to use infringing contactless payments when it provides "instruction" and "services" to complete contactless payments. (Dkt. No. 9 ¶ 38.) What is at issue is clear: Defendant allegedly encouraged some of its many customers to use contactless payments with branded credit cards at pay stations. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (explaining that "instructing how to engage in an infringing use[] . . . show[s] that infringement was encouraged"). In this context, the Court must accept Plaintiff's well-pled allegations as true at this juncture. *O'Daniel*, 922 F.3d at 304.

**B. Any pre-suit damages are dismissed from this case**

Defendant moves to dismiss any allegations in the Complaint that Plaintiff is entitled to pre-suit damages. Plaintiff responded that it is "not seeking pre-suit damages for the patents asserted against Defendants." (Dkt. No. 30 at 10.) Accordingly, the Court finds that this unopposed portion of Defendant's Motion should be **GRANTED**.

**C. Defendant has not established that the asserted patents are ineligible under abstract idea law at the pleadings stage**

Defendant argues that the five asserted patents are invalid under abstract idea law. The claims, which specify various hardware control signals, control units, clocking arrangements, logic gates, and latches, allegedly are directed to data processing, control, and synchronization ideas. Defendant submits that not a single one of such claimed circuits contains an inventive concept.

The Court finds that this portion of Defendant's Motion should be **DENIED**. Nonetheless, the Court finds that three of the five asserted patents (the '145, '543, and '885 Patents) are directed to abstract ideas.

i. ’145 Patent

The independent claims of the ’145 Patent vary in length and specify systems for selecting signals, such as a clock signal, to send to another component or chip on a different power supply domain. Claims 10 and 17 specify using “logic gates” to control whether a third logic gate receives a signal; claim 1 specifies that the received signal may be a “clock” signal. ’145 Patent at 10:15–38, 11:1–13, 12:7–15. Claim 17, excerpted below, is illustrative.

> A method, comprising:
>
> deactivating one of a first signal or a second signal by supplying a control signal to first and second logic gates; and
>
> forwarding an active one of the first or second signals to a third logic gate, wherein the first, second and third logic gates are spaced apart from one another and respectively arranged within a first, second and third power supply domain.

’145 Patent at 12:7–15.

The Court finds that the claims of the ’145 Patent are directed to the abstract idea of “choosing which of multiple signals should be passed through a circuit.” Plaintiff, stressing the teachings of the specification, contends that the claims are instead “directed to a technical improvement in circuit operation.” (Dkt. No. 17 at 7–9.) Plaintiff also contends that the claims offer improvements to jitter and bit errors and power supply noise and isolation. However, the claims instead, and generically, claim a series of logic gates, power supply domains, and signals that could or could not implement such benefits described by the specification. Moreover, reciting generic hardware elements alone (e.g., a logic gate) does not preclude such a claim from being directed to an abstract idea. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1042, 1046 (Fed. Cir. 2021).

Plaintiff, nonetheless, made specific allegations about the unconventionality of the ’145 Patent’s application of different power supply domains and logic configurations, which may confer patentability. Defendant’s Motion provides nothing at the pleadings stage to conclude that such

claimed techniques were well-known, routine, or conventional. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) (*citing Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)). While the '145 Patent is directed to an abstract idea, it survives dismissal as to step two of the *Alice* analysis.

i. <u>'543 Patent</u>

The independent claims of the '543 Patent specify varying features. Although Defendant alleges that the entire patent is directed to an abstract idea, it only analyzes claim 16 of the '543 Patent. This claim specifies a system including a "logic unit" between two "device[s]" that allows the two devices to communicate. '543 Patent at 8:13–22. Plaintiff, stressing the teachings of the specification, contends that the patent "addresses a specific problem in electronic systems that include components operating in independent time domains." (Dkt. No. 17 at 13.)

The Court finds that claim 16 is directed to the abstract idea of "coordinating access to resources between devices operating in different clock domains." Plaintiff's contention that the focus of the claimed advance is a busy-detection and synchronization architecture that enables reliable memory access without imposing pulse-width or clock constraints disregards what claim 16 actually recites. Nowhere are such "busy-detection" features recited in claim 16. Moreover, the claim specifies a system for "synchroniz[ing]" with a "clock domain." '543 Patent at 8:13–22. Plaintiff's contention that the system does not impose a "clock constraint[]" seems to ignore this claim language.

Plaintiff's repeated assertion that the claims are rooted in a "a system-level hardware architecture," which allegedly makes it less abstract, ignores that claim 16 is, fundamentally, directed to providing a signal for coordinating access to resources. Moreover, reciting hardware elements alone does not, without more, save a claim from being directed to an abstract idea. *See Yu*, 1 F.4th at 1042, 1046.

However, Plaintiff made specific allegations at this stage about the unconventionality of the ’543 Patent’s application of synchronizing different clock domains and requests and units for latching resource request signals from a first device in response to a timing signal of a resource request signals, which may confer patentability. Defendant’s Motion provides nothing at the pleadings stage to conclude that such claimed techniques were well-known, routine, or conventional. *See Cellspin*, 927 F.3d at 1318. While claim 16 of the ’543 Patent is directed to an abstract idea, it survives dismissal so that the Court may subsequently address step two of the *Alice* analysis. Since Defendant only briefed claim 16, the Motion as to the other asserted claims of this patent is **DENIED**.

ii. ’885 Patent

Claim 1 of the ’885 Patent, which is the only independent claim of this patent, recites the features related to near field transactions (e.g., that allow a mobile phone to make a payment). ’885 Patent at 16:26–49. Claim 16 repeats similar features, but claim 21 recites various sensor, condition, and RFID tag features that are not found in claims 1 and 16. *Id.* at 17:46–18:5, 18:21–44.

Defendant argues that claim 1 is directed to storing transaction data and controlling access to it—i.e., store transaction-related data, enforce security restrictions, and log or manage NFC transaction information. (Dkt. No. 13 at 14.) Defendant argues that the claim fails to specify how any contemplated security policies are implemented and instead just claims a desired result of securing storage for a transaction. (*Id.*)

Plaintiff argues that the ’885 Patent instead discloses a hardware architecture comprising a non-volatile memory, a security processor, and an NFC component, wherein a memory module “provides *integrated* security and NFC functionality.” (Dkt. No. 17 at 10.) This architecture

allegedly provides an invention because it moves the NFC interface inside a secured memory boundary that uses a security processor to control access and traffic. (*Id.* at 11.)

The Court finds that claims 1 and 16 of the '885 Patent are directed to an abstract idea, consistent with the *Universal Secure Registry* case. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1351–1352 (Fed. Cir. 2021). In that case, the Federal Circuit analyzed a patent claim specifying a "biometric sensor," a "communication interface," a "secure registry," and a processor. *Id.* The Federal Circuit explained that these components worked together to authenticate a user and "facilitate a transaction." *Id.* at 1352–53. Such analysis is applicable to the challenged claims.

Claims 1 and 16 of the '885 Patent are directed to the abstract idea of securing a near field communication transaction using a security processor. Like the challenged claims in *Universal Secure Registry*, which specified a "communication interface," a "secure registry," and a processor, claims 1 and 16 of the '885 Patent similarly specify a near field communication transaction, a memory, and a security processor that accesses the memory. The processor in the *Universal Secure Registry* performed an authentication process using secret and encrypted information, and such secure functions parallel the claimed "security processor" functions that both Defendant and Plaintiff identify. Although claims 1 and 16 of the '885 Patent do not specify a "biometric sensor" to improve the security of a transaction, they similarly specify using secure software or partitioning memory to improve the security of a transaction.

Nonetheless, Plaintiff has pled plausible facts regarding the way the claimed memory, security processor, and NFC component work and function together to secure a transaction provides an inventive concept, which differ from those addressed in *Universal Secure Registry*. Said differently, Defendant's Motion provides nothing at the pleadings stage to conclude that such

claimed techniques were well-known, routine, or conventional at step 2 of the *Alice* framework. *See Cellspin*, 927 F.3d at 1318. These claims survive dismissal to be considered under step two of the *Alice* analysis hereafter.

iii. <u>’628 Patent</u>

Claim 12 of the ’628 Patent contemplates reconfigurable processing devices, wherein such devices can “perform digital signal processing” based on data path instructions and filter coefficients. Defendant alleges that ’628 Patent is directed to an abstract idea, but it only analyzes claim 12 of the ’628 Patent. ’628 Patent at 8:38–63.

Defendant’s contentions that the reconfigurable processing apparatus specified in claim 12 is directed to an abstract idea are inapt. Defendant argues that claim 12 is “directed to controlling how data is processed by loading instruction data, selecting an instruction based on an identified address, selecting coefficient addresses, and performing DSP operations accordingly.” (Dkt. No. 13 at 15, 16.) However, the Court does not find that this specific, low-level function for specifying how a digital signal processor functions is an abstract idea, such as one that would monopolize a fundamental “building block[] of human ingenuity.” *See Alice*, 573 U.S. at 216–17.

The precedent Defendant cites, moreover, is not analogous. Defendant claims that the Federal Circuit’s *Electric Power* and *RecogniCorp* precedent comports with its position claim 12 is directed to an abstract idea. (Dkt. No. 13 at 15, 16; Dkt. No. 26 at 3, 4.) However, *Electric Power*’s analysis of claims for processing and displaying grid power metrics to a user are far removed from low-level methods of reconfiguring the way a digital processor operates. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

*RecogniCorp* also does not support Defendant. (*See* Dkt. No. 26 at 3, 4.) That case addressed claimed processes whereby a user displays images on a display, assigns image codes to the images using a mathematical formula, and then reproduces the image based on the codes.

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). Here, in contrast, claim 12 does not address methods for taking data to process and reformat it into a different format. Instead, the claim focuses on how a processing device can change the way it processes data using instructions, addresses, and coefficients.

Accordingly, the Court finds that claim 12 is directed to a specific instruction, address, and coefficient processing method to configure a processing system, rather than to an abstract idea. *See, e.g.*, *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (finding claims drawn to a specific means or method that improves the relevant technology). Defendant's Motion, moreover, provides nothing at the pleadings stage to conclude that any of such claimed processes were no more than well-known, routine, or conventional. *See Cellspin*, 927 F.3d at 1318.

iv. <u>'926 Patent</u>

Claim 1 of the '926 Patent, which is the only independent claim of this patent, recites the following features:

> A reset signal generation circuit for generating a first reset signal provided to a synchronous circuit that operates in accordance with a clock signal, the reset signal generation circuit comprising:
>
> an operation detection circuit for detecting whether the synchronous circuit is operating normally or abnormally and for generating an operation detection signal; and
>
> a signal control circuit, connected to the operation detection circuit, for generating the first reset signal based on a system reset signal, the clock signal, and the operation detection signal,
>
> wherein the signal control circuit generates the first reset signal that is synchronous to the clock signal in response to the system reset signal when the synchronous circuit is operating normally, and
>
> wherein the signal control circuit generates the first reset signal that is asynchronous to the clock signal in response to the system reset signal when the synchronous circuit is operating abnormally.

'926 Patent at 13:4–22.

The Court is not convinced that these specific circuits and combinations of various specific signals are directed to an abstract idea. *See, e.g.*, *Contour IP Holding*, 113 F.4th at 1379. Instead, they focus on specific hardware-based schemes directed to alleged improvements in detecting normal and abnormal conditions. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 909 (Fed. Cir. 2022). Moreover, Defendant's Motion provides nothing at the pleadings stage to conclude that such claimed circuits and combinations of signals were well-known, routine, or conventional. *See Cellspin*, 927 F.3d at 1318.

**D. Plaintiff's analysis of the EMV contactless payment standard plausibly alleges direct infringement**

Pleading a claim for induced infringement requires a patent owner to plausibly allege facts that a third party directly infringed a patent. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Here, Plaintiff has done just that via its analysis of one or more standards and the limitations of the asserted patents. (*See* Dkt. Nos. 9-2, 9-4, 9-6, 9-8, 9-10.)

Defendant's arguments are not persuasive. Defendant reads *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) out of context, which instead confirms that Plaintiff's infringement allegations can rely on a standard to show infringement. There the Federal Circuit explained that "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product." *Fujitsu*, 620 F.3d at 1327. Plaintiff consistently and plausibly alleges that the use of Defendant's branded credit cards entails compliance with one or more EMV protocols, such as the "EMV Level 1 Contactless Interface Specification v3.2." *See, e.g.*, Dkt. No. 9-2. The Court finds that this portion of Defendant's Motion should be **DENIED**.

## IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss (Dkt. No. 13) is **GRANTED** as to pre-suit damages but is **DENIED** in all other respects.

**So ORDERED and SIGNED this 25th day of September, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE